# United States Tax Court

162 T.C. No. 4

CLAIR R. COUTURIER, JR.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 19714-16.                    Filed February 28, 2024.

————

I.R.C. § 4973 provides for the imposition of an excise tax equal to 6% of the amount of "excess contributions" to a taxpayer's individual retirement account (IRA). Under the law as it existed before 2022, a taxpayer's failure to file Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, generally caused the limitations period for assessment of I.R.C. § 4973 excise tax to remain open indefinitely. *See* I.R.C. § 6501(c)(3); *Paschall v. Commissioner*, 137 T.C. 8, 15–17 (2011). For tax years 2004–2008, P filed timely Forms 1040, U.S. Individual Income Tax Return, but he did not file a Form 5329 for any year. On June 10, 2016, R issued him a notice of deficiency determining deficiencies in I.R.C. § 4973 excise tax for 2004–2008.

The Consolidated Appropriations Act, 2023 (Act), Pub. L. No. 117-328, div. T, § 313(a), 136 Stat. 4459, 5348–49 (2022), amended I.R.C. § 6501(*l*) by adding a new paragraph (4). Paragraph (4)(A) provides that the filing of an individual's income tax return will start the running of a limitations period on assessment of I.R.C. § 4973 excise tax. Paragraph (4)(C) provides that a six-year period of limitations will apply where a taxpayer has filed a Form 1040, but not a Form 5329, for the tax year(s) in question. Congress specified that the amendment to I.R.C. § 6501(*l*)

**Served 02/28/24**

"shall take effect on the date of the enactment of this Act," i.e., December 29, 2022. *See* Act § 313(b), 136 Stat. at 5349.

On July 27, 2023, P filed a Motion for Partial Summary Judgment. He contends that I.R.C. § 6501(*l*)(4) applies retroactively, and that the notice of deficiency for 2004–2008 was untimely because it was issued more than six years after his 2004–2008 tax returns were filed.

*Held*: I.R.C. § 6501(*l*)(4) is applicable only with respect to tax returns filed on or after December 29, 2022. Because P's returns were filed before December 29, 2022, I.R.C. § 6501(*l*)(4) does not apply to this case. It therefore poses no obstacle to the assessment of I.R.C. § 4973 excise tax for P's 2004–2008 tax years.

*Held, further*, assuming arguendo that Act § 313(b) is ambiguous, I.R.C. § 6501(*l*)(4) as interpreted by petitioner would have a retroactive effect. The notice of deficiency was timely when issued, and P's timely Petition caused the assessment period of limitations to be suspended until the Court's decision becomes final and for 60 days thereafter. *See* I.R.C. § 6503(a)(1). In P's view, the 2022 amendment would operate retroactively because it would terminate a limitations period that I.R.C. § 6503 had suspended indefinitely, imposing upon the Government a six-year limitations period that did not exist when the notice of deficiency was issued. P has failed to show "clear congressional intent" militating in favor of such retroactive application. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). The 2022 amendment therefore does not render untimely the notice of deficiency issued for 2004–2008.

––––––––

*Michael Eddison Romero*, *Alvah Lavar Taylor*, *Daniel W. Soto*, and *Jonathan T. Amitrano*, for petitioner.

*Hilary E. March*, *Laura A. Price*, *Noelle White*, *Roger Kang*, *Patricia P. Wang*, and *Edward T. Mitte*, for respondent.

## OPINION

LAUBER, *Judge*: This case involves a determination by the Internal Revenue Service (IRS or respondent) that petitioner in 2004 made an excess contribution of $25,132,892 to his individual retirement account (IRA). Section 4973(a)[1] imposes an excise tax "in an amount equal to 6 percent of the amount of the excess contributions" that a taxpayer makes to an IRA in any given year. This tax continues to apply for future years, until such time as the original excess contribution is distributed to the taxpayer and included in income. *See* § 4973(b)(2).

In 2016 the IRS issued petitioner two notices of deficiency that determined, for tax years 2004–2008 and 2009–2014, respectively, excise tax deficiencies under section 4973 in the aggregate amount of $8,476,705, plus associated additions to tax and penalties. Currently before the Court is petitioner's Motion for Partial Summary Judgment, in which he contends that the "deficiencies . . . for the tax years 2004 through 2008 are barred by the statute of limitations on assessment." In so urging he relies on a 2022 amendment to section 6501(*l*), which he contends applies retroactively. *See* Consolidated Appropriations Act, 2023 (Act), Pub. L. No. 117-328, div. T, § 313(a), 136 Stat. 4459, 5348–49 (2022) (codified at section 6501(*l*)(4)). We disagree and will accordingly deny the Motion.

### *Background*

The following facts are derived from the parties' pleadings, Motion papers, and the Exhibits attached to petitioner's Motion. They are stated solely for the purpose of deciding the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Washington when he petitioned this Court. Absent stipulation to the contrary, appeal of this case would apparently lie to the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b)(1)(A), (2).

Petitioner was employed as a corporate executive until at least 2004. In conjunction with his employment he participated in multiple deferred compensation arrangements. As of 2004 petitioner owned 4,586 shares in an employee stock ownership plan (ESOP), a qualified retirement plan. He also held interests in several compensatory plans,

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

none of which was qualified. These included a Compensation Continuation Agreement, an Incentive Stock Option plan, and a Value Enhancement Incentive plan.

In 2004, as part of a corporate reorganization, petitioner was offered (and he accepted) a $26 million "buyout" from his company. According to respondent, the $26 million was paid in exchange for his ESOP stock and for his relinquishment of the interests he held in the nonqualified plans. The $26 million of consideration took the form of a $12 million cash payment to his IRA and a $14 million promissory note payable to his IRA. The promissory note was paid in full in 2005.

On April 11, 2005, petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2004. On line 16(a) of that return he characterized the $26 million as a nontaxable "rollover contribution" to his IRA. He left blank line 59, "Additional tax on IRAs, other qualified retirement plans, etc." He timely filed Forms 1040 for 2005–2008, again leaving line 59 blank. He did not include a completed Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, with any of these returns.

Upon examination of petitioner's returns the IRS concluded that the bulk of the $26 million received by his IRA was attributable to his relinquishment of rights under the non-ESOP deferred compensation plans, which were not eligible for tax-free rollover. It accordingly determined that $25,132,892 of the $26 million constituted an "excess contribution" to his IRA under section 4973(a)(1) and (b)(2). On June 10, 2016, the IRS issued the two notices of deficiency described above.

Petitioner timely petitioned this Court. In 2017 he filed a Motion for Summary Judgment contending that the notices of deficiency were untimely because they were issued after the expiration of the three-year period of limitations specified in section 6501(a) and/or the six-year period of limitations specified in section 6501(e)(3). Respondent filed a Cross-Motion for Partial Summary Judgment, urging that the excise taxes could be assessed "at any time" under section 6501(c)(3) because petitioner had failed to report his excess contributions on Form 5329, which constitutes a tax "return" within the meaning of section 6011. In April 2019 we denied both parties' Motions, concluding that the period of limitations issue was "intertwined with the merits," i.e., with the question of whether petitioner had actually made "excess contributions" reportable on Form 5329.

On August 27, 2021, petitioner filed a second Motion for Summary Judgment, contending that the IRS "is precluded as a matter of law from asserting excise tax liability under section 4973" because it did not issue him a notice of deficiency challenging his income tax treatment of the transactions in question. We denied that Motion, ruling (among other things) that "[t]he IRS's failure to examine a return . . . does not constitute a concession or admission that the taxpayer's position was correct." *Couturier v. Commissioner*, T.C. Memo. 2022-69, 124 T.C.M. (CCH) 6, 9.

On July 27, 2023, petitioner filed the Motion for Partial Summary Judgment currently before the Court. He requests a ruling that the period of limitations on assessment imposed by the newly enacted section 6501(*l*)(4) renders the notice of deficiency for taxable years 2004–2008 untimely. (He does not challenge, on period of limitations grounds, the excise tax deficiencies determined for 2009–2014.) Respondent objected to the Motion, and further briefing ensued.

*Discussion*

A. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here respondent). *Sundstrand Corp.*, 98 T.C. at 520. The question presented—whether section 6501(*l*)(4) applies retroactively—is purely one of law. *See Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 537 (9th Cir. 1994) (ruling that whether a statute applies retroactively is a question of law subject to de novo review). We find no material facts in genuine dispute and conclude that this issue may be adjudicated summarily.[2]

---

[2] We held the first phase of trial in this case in September 2023, hearing expert testimony, and the second phase is scheduled for April 2024. Both parties request that we decide the legal question presented by this Motion for Partial Summary Judgment before the second phase of the trial begins.

B.      *Statutory Background*

Section 4973 provides that, in the case of any IRA, "there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's account[]." § 4973(a).  The term "excess contributions" is initially defined as the excess of (1) the amount contributed to an IRA for the taxable year (other than a "rollover contribution" described in section 408(d)(3)), over (2) the amount allowable as a deduction under section 219 for such contribution.  § 4973(b)(1).

Section 6501(a) generally requires the Commissioner to assess tax "within 3 years after the return was filed," subject to various exceptions.  "In the case of failure to file a return, the tax may be assessed . . . at any time."  § 6501(c)(3).  A "return" is defined as "the return required to be filed by the taxpayer."  § 6501(a).

In *Paschall v. Commissioner*, 137 T.C. 8, 16 (2011), we held that a return will start the running of the limitations period for section 4973 purposes only if the return includes sufficient information to enable the IRS to compute the taxpayer's excise tax liability.  The taxpayer in *Paschall* had neglected to file Form 5329, and his Forms 1040 included no information about his excise tax liability, leaving all relevant lines blank.  *Paschall*, 137 T.C. at 16–17.  We accordingly held "that the filing of the Forms 1040 did not start the statute of limitations running for purposes of the section 4973 excise tax in the absence of accompanying Forms 5329."  *Id.* at 17.  Interpreting the law as it existed before 2022, we have held that a taxpayer's failure to file Form 5329 (or provide the required information elsewhere on the Form 1040) causes the limitations period for assessment of section 4973 excise tax to remain open indefinitely.  *See Mazzei v. Commissioner*, 150 T.C. 138, 149 n.15 (2018) (citing *Paschall*, 137 T.C. at 15–17), *rev'd on other grounds*, 998 F.3d 1041 (9th Cir. 2021).

Section 6501(*l*) sets forth special period of limitations rules for certain excise taxes.  In 2022 Congress amended section 6501(*l*) by adding thereto a new paragraph (4).  *See* Act § 313, 136 Stat. at 5348.  Section 6501(*l*)(4)(A) addresses the types of returns that will start the running of a limitations period on assessment of section 4973 excise tax.  It provides in pertinent part as follows:

> For purposes of any tax imposed by section 4973 . . .  in connection with an [IRA], the return referred to in this

section [i.e., section 6501] shall include the income tax return filed by the person on whom the tax under such section is imposed for the year in which the act (or failure to act) giving rise to the liability for such tax occurred.

Under the amended statute, the filing of an income tax return on Form 1040, even if no Form 5329 is filed, will start the running of a period of limitations. However, the Act establishes a six-year, rather than a three-year, limitations period in this scenario. Section 6501(*l*)(4)(C) provides:

In any case in which the return with respect to a tax imposed by section 4973 is the individual's income tax return for purposes of this section, subsection (a) [i.e., section 6501(a)] shall be applied by substituting a 6-year period in lieu of the 3-year period otherwise referred to in such subsection.

In short, while the usual three-year limitations period will apply if a taxpayer files a Form 5329, a six-year period of limitations will apply where a taxpayer files a Form 1040, but not a Form 5329, for the tax year(s) in question.

Section 313(b) of the Act, 136 Stat. at 5349, specifies the effective date for this amendment to section 6501(*l*). It provides that the amendment "shall take effect on the date of the enactment of this Act," i.e., on December 29, 2022. The question presented by petitioner's Motion is whether Congress manifested an intent that section 6501(*l*)(4) apply retroactively, i.e., that it apply "to all pending disputes between taxpayers and the IRS as of the date of enactment." This is a question of first impression in our Court.

C.   *Analysis*

Although petitioner did not file Form 5329 for any year at issue, he did file timely Federal income tax returns. If section 6501(*l*)(4) operates retroactively, the Forms 1040 he filed for 2004–2008 would trigger the commencement of a limitations period, and a six-year period of limitations (rather than an indefinite period as we ruled in *Paschall*) would then apply. Because petitioner filed his 2004–2008 returns more than six years before June 10, 2016—the date on which the IRS issued him the notice of deficiency for those years—that notice of deficiency would be rendered untimely. Needless to say, respondent resists this conclusion.

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court clarified the steps a court should take to ascertain whether retroactive application of a statute is appropriate. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187 (9th Cir. 2016). The first step is determining whether the statute contains an express statement as to its temporal reach. *Ibid.* (citing *Landgraf*, 511 U.S. at 280). If Congress has furnished a clear directive in the statutory text, we must give effect to Congress's intent. *See ibid.*; *cf. Oluwa v. Gomez*, 133 F.3d 1237, 1239–40 (9th Cir. 1998) (finding clear textual evidence of legislative intent that new statute applies retroactively).

Section 313(b) of the Act provides that the amendment to section 6501(*l*) "shall take effect on the date of the enactment of this Act," i.e., on December 29, 2022. Because this amendment specifies the consequences of filing tax returns, it is most naturally read to apply in the case of returns filed on or after the effective date. Congress has previously amended section 6501 numerous times. In each instance, when Congress intended that the amendment apply to returns filed before the date of enactment, it has said so explicitly in the applicable effective-date provision. *See, e.g.*, Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, § 2005(b), 129 Stat. 443, 457 (providing that amendment to section 6015(e) "shall apply to . . . returns filed after the date of the enactment of this Act [and to] returns filed on or before such date if the period specified in section 6501 . . . for assessment of the taxes with respect to which such return relates has not expired as of such date"); Hiring Incentives to Restore Employment Act, Pub. L. No. 111-147, § 513(d), 124 Stat. 71, 112 (2010) (providing that amendment to section 6015(e) "shall apply to . . . returns filed after the date of the enactment of this Act [and to] returns filed on or before such date if the period specified in section 6501 . . . for assessment of such taxes has not expired").

According to petitioner, "Congress intended that new § 6501(*l*)(4) apply to all [section 4973] disputes with the IRS . . . that were pending as of the date of enactment." Once again, Congress knows how to use this sort of wording in an effective-date provision when that is what it intends. *See, e.g.*, Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, § 422(b), 129 Stat. 2242, 3123 (2015) ("The amendments made by this section shall apply to cases pending as of the day after the date of the enactment of this Act . . . ."); Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7731(d), 103 Stat. 2106, 2402 ("The amendments made by this section shall apply to positions taken . . . in proceedings which are pending on [December 31, 1989.]"). Because

Congress did not employ wording referring to "pending cases" in the Act's effective-date provision, the statutory text supplies no support for petitioner's characterization of Congress's intent.

Petitioner considers it significant that section 313(b) of the Act lacks explicit wording that delimits its temporal scope. He contrasts it with other effective-date provisions in the Act that specify the years to which certain amendments will apply. *See, e.g.*, Act § 302(c), 136 Stat. at 5339 (specifying that amendments "shall apply to *taxable years* beginning after the date of the enactment of this Act" (emphasis added)); *id.* § 337(c), 136 Stat. at 5373 (specifying that amendments "shall apply to *calendar years* beginning after the date of the enactment of this Act" (emphasis added)). In petitioner's view, these other provisions show that "Congress knows how to limit the application of a change in the law to specific time periods." Absent text in section 313(b) of the Act specifying that section 6501(*l*)(4) applies to future years or future tax returns, petitioner infers that Congress must have intended section 6501(*l*)(4) to apply with respect to returns filed for prior years as well.

There is no logical basis for this inference. The provisions petitioner cites specify that the amendment in question shall apply prospectively to "taxable years" or "calendar years" beginning after the Act's effective date. Many taxpayers have fiscal years that differ from the calendar year for tax purposes. To avoid ambiguity, Congress specified in these provisions precisely how prospective application of each amendment would work. There was no need for Congress to do this in the Act's effective-date provision because the amendment that it governs— section 6501(*l*)(4)—applies to tax returns, not tax years.

Tellingly, petitioner limits his discussion to effective-date provisions in the Act that specify application to future years, while ignoring other provisions that specify application to prior years. *See, e.g.*, Act § 111(b), 136 Stat. at 5293–94 (providing that the amendment shall take effect for taxable years beginning after December 31, 2019); *id.* § 311(b)(2), 136 Stat. at 5347 (stating that the amendment will apply "[i]n the case of a qualified birth or adoption distribution . . . made on or before the date of the enactment of th[e] Act"); *id.* § 331(a)(3), (b)(3), (c)(2), 136 Stat. at 5363, 5365, 5366 (providing that the amendments will apply to disaster incident periods beginning on or after January 26, 2021). If "Congress knows how to limit the application of a change in the law to specific time periods," as petitioner contends, Congress presumably would have imbued section 313(b) of the Act with similar

terminology specifying application to prior tax returns and prior tax years, had that been its intent. But Congress did not do so.

In a slightly different vein, petitioner contends that section 6501(*l*)(4) addresses "the current conduct" of the IRS, by which petitioner seems to mean the Commissioner's authority to assess tax for prior years. Petitioner thus appears to argue that the statutory amendment should be interpreted to be effective—not with respect to *tax returns filed* on or after December 29, 2022—but with respect to *assessments made* on or after that date. As a rule, the IRS can make no "assessment" until a tax controversy has been finally resolved. *See* § 6213(a). This argument accordingly leads petitioner to the same conclusion, i.e., that Congress intended section 6501(*l*)(4) to apply to "all disputes with the IRS . . . that were pending as of the date of enactment."

Section 6501, of course, imposes periods of limitations on assessment. But in this case we are concerned with the effective date of section 6501(*l*)(4) in particular. This amendment says nothing about assessment and does not include that word. Rather, section 6501(*l*)(4)(A) provides that, for purposes of section 4973, "*the return referred to* in this section [i.e., in section 6501] shall include *the income tax return* filed by the person" allegedly subject to excise tax. (Emphasis added.) This amendment effected a substantive change in the law by providing that a different type of tax return—viz., Form 1040, regardless of its contents—would trigger the running of a period of limitations for assessment of section 4973 excise tax.

The question presented by petitioner's Motion is: "As of what date is this amendment—i.e., the new rule that a Form 1040 will trigger the running of a limitations period—applicable?" Section 313(b) of the Act specifies that this amendment "shall take effect on the date of the enactment of this Act," i.e., on December 29, 2022. This means that, as of December 29, 2022, "the return referred to in this section *shall include* [for section 4973 purposes] the income tax return" filed by the relevant taxpayer. (Emphasis added.) The logical corollary is that, for returns filed *before* December 29, 2022, the return referred to in section 6501 *did not include* the income tax return filed by that person.

In short, section 6501(*l*)(4) specifies the consequences of filing tax returns. Because Congress provided that this amendment "shall take effect on the date of the enactment," we think the amendment is logically read to apply to tax returns filed on or after the date of enactment. But giving some deference to petitioner's argument, we will assume

arguendo that the statute is ambiguous in this respect. Making that assumption, we must consider whether application of the amendment, as petitioner urges, would have a retroactive effect. *See Beaver*, 816 F.3d at 1187 (citing *Landgraf*, 511 U.S. at 280).

A statute has retroactive effect if it "would impair rights a party possessed when he acted." *Landgraf*, 511 U.S. at 280; *Beaver*, 816 F.3d at 1187. The Government, like a private individual, may be "a party" whose rights are impaired by the retroactive application of a statute. *See United States v. Bacon*, 82 F.3d 822, 823–24 (9th Cir. 1996) (rejecting retroactive application of a statute restricting the Government's right to bring a fraudulent transfer action); *cf. FTC v. AT&T Mobility LLC*, 883 F.3d 848, 864–65 (9th Cir. 2018) (rejecting retroactive application of an agency directive restricting the Government's right to bring legal enforcement action).

If it is determined that a statute would have retroactive effect, we must consider whether "clear congressional intent" militates in favor of retroactive application. *See Landgraf*, 511 U.S. at 280; *Beaver*, 816 F.3d at 1188. In doing so we apply a presumption that Congress did not intend for a statute affecting substantive rights to operate retroactively. *See Landgraf*, 511 U.S. at 280; *Beaver*, 816 F.3d at 1188; *Chenault*, 37 F.3d at 537 ("[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." (quoting *Landgraf*, 511 U.S. at 272)). Giving retroactive effect to a statutory amendment adversely affecting a party's substantive rights would contravene principles of fair notice, reasonable reliance, and settled expectations. *See Landgraf*, 511 U.S. at 265–73 (discussing historical, legal, and constitutional considerations informing the presumption against retroactivity); *Koonwaiyou v. Blinken*, 69 F.4th 1004, 1008 (9th Cir. 2023) (adopting presumption against retroactivity "[b]ecause applying a law retroactively raises serious concerns about notice, fairness, and equality").[3]

The IRS issued the notice of deficiency for petitioner's 2004–2008 years on June 10, 2016. That notice was issued timely because, as of

---

[3] The opposite presumption may apply for certain statutes affecting procedural rights. *See Chenault*, 37 F.3d at 538. That is because there may be "diminished reliance interests in matters of procedure." *Landgraf*, 511 U.S. at 275; *see Bacon*, 82 F.3d at 824 ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." (quoting *Landgraf*, 511 U.S. at 275)). Petitioner does not contend that section 6501(*l*)(4), which restricts the IRS's substantive right to assess tax, is merely "procedural" in its application.

that date, there was no applicable period of limitations owing to petitioner's failure to file Form 5329 (or supply the required information elsewhere on his Form 1040) for any year. *See* § 6501(c)(3); *Paschall*, 137 T.C. at 15–17. Petitioner timely petitioned this Court seeking review of the deficiencies. His timely Petition triggered section 6503, which suspends the running of the period of limitations until this Court's decision has become final "and for 60 days thereafter." § 6503(a)(1). Thus, the period of limitations during which the Commissioner may assess the tax in question will remain open for 60 days after we render our decision (and the completion of all appellate review).

As of December 28, 2022—the day before the Act became law—the period of limitations on assessment for 2004–2008 had not run but was indefinitely suspended. Under petitioner's interpretation of the Act's effective-date provision, his filing of Forms 1040 for 2004–2008 would trigger the running of the new six-year limitations period, and the notice of deficiency for tax years 2004–2008 would be rendered untimely. New section 6501(*l*)(4) in his view would thus apply retroactively: It would terminate a limitations period that section 6503 had suspended indefinitely, imposing upon the Government a six-year limitations period that did not exist when the notice of deficiency was issued. The IRS could not possibly have been aware, during an examination that concluded in 2016, that its right to assess tax would be restricted by a six-year period of limitations enacted in 2022. Application of the amendment as petitioner urges would thus contravene principles of fair notice, reasonable reliance, and settled expectations. *See Landgraf*, 511 U.S. at 265–73; *Koonwaiyou*, 69 F.4th at 1008.

Section 313(b) of the Act provides that the amendment to section 6501(*l*) "shall take effect on the date of the enactment of this Act." This text evinces no indication, much less a clear manifestation of congressional intent, that the amendment is to apply retroactively. "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257. But in petitioner's interpretation the amendment would apply retroactively because it "would impair rights [the Commissioner] possessed when he acted," viz., his substantive right to assess excise tax on the date he mailed the notice of deficiency. *See id.* at 280; *Beaver*, 816 F.3d at 1187.

Quoting passages from the legislative history, petitioner contends that the purpose of the Act was to "alleviate a perceived hardship"

caused by the requirement that taxpayers file Form 5329 to commence the running of a limitations period. But this tells us nothing about Congress's intention regarding the amendment's application to pending cases or earlier tax years. A "perceived hardship" would be alleviated regardless of whether section 6501(*l*)(4) applied prospectively or retroactively.[4]

In sum, we conclude that the most natural reading of the Act's effective-date provision is that section 6501(*l*)(4) applies purely prospectively, i.e., with respect to returns filed on or after the date of enactment. We find no evidence anywhere in the Act or its legislative history that Congress intended section 6501(*l*)(4) to apply to pending cases, to prior tax years, or to tax returns filed for prior tax years. "[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Chenault*, 37 F.3d at 538 (quoting *Landgraf*, 511 U.S. at 272). The text of section 313(b) does not remotely suggest any such requirement. And even if section 313(b) were thought ambiguous, the "presumption against retroactivity" would attach because section 6501(*l*)(4) would operate to alter the IRS's substantive right to assess tax by imposing upon it a six-year period of limitations that did not previously exist. We accordingly hold that section 6501(*l*)(4) applies prospectively only, so it poses no obstacle to the assessment of section 4973 excise tax against petitioner for the 2004–2008 tax years.[5]

---

[4] To the extent the legislative history sheds any light on the question presented, it suggests a congressional intent that section 6501(*l*)(4) be applied prospectively and not retroactively. *See* H.R. Rep. No. 117-283, pt. 1, at 139–40 (2022) (stating that "[t]he filing of Form 5329 will generally no longer be required" to start the running of a limitations period).

[5] Petitioner contends that the presumption against retroactivity does not apply to cases such as this, where "Congress relieved a prior burden on taxpayers (as opposed to creating a new burden)." Petitioner cites no authority to support this proposition, and we have discovered none. In many cases where a statutory amendment "relieve[s] a prior burden on taxpayers," it will impose a reciprocal burden on the IRS, e.g., by preventing the IRS from taxing income or disallowing a deduction. In all such cases, the amendment would adversely affect the IRS's substantive rights. But that is precisely the situation in which the Supreme Court and the Ninth Circuit have held that this presumption against retroactivity *does apply*. *See Landgraf*, 511 U.S. at 280; *Beaver*, 816 F.3d at 1188.

To reflect the foregoing,

*An order will be issued denying petitioner's Motion for Partial Summary Judgment.*

Reviewed by the Court.

KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, and WEILER, *JJ*., agree with this opinion of the Court.

BUCH, URDA, JONES, TORO, and GREAVES, *JJ*., concur in the result.

FOLEY and MARSHALL, *JJ*., dissent.

TORO, *Judge*, concurring in the result: I agree that petitioner's Motion for Partial Summary Judgment must be denied and therefore concur in the result the opinion of the Court reaches. But my path for getting to that result is different from that of the opinion of the Court, as I explain below. Moreover, this disagreement matters, because the approach adopted by opinion of the Court is, in my view, both incorrect and overbroad and will produce the wrong outcome for taxpayers with facts different from Mr. Couturier's, as I further explain below.

## I.   *The Narrow and Easily Resolved Question Before the Court*

As I see it, the precise question before us is as follows: Does the Internal Revenue Code (Code or I.R.C.) bar the Commissioner of Internal Revenue (Commissioner) from assessing the taxes imposed by section 4973 for the years 2004 to 2008 when (1) the Notice of Deficiency (Notice) upon which the case is based was issued on June 10, 2016, (2) in view of our precedent and the posture of this case, we must assume that at the time the Notice was issued section 6501(c)(3) applied and permitted the Commissioner to make an assessment of those taxes "at any time," (3) under section 6503(a)(1), the issuance of the Notice "suspended" "[t]he running of the period of limitations provided in section 6501," and (4) the Consolidated Appropriations Act, 2023 (Act), Pub. L. No. 117-328, div. T, § 313(a), 136 Stat. 4459, 5348–49 (2022), made no change to section 6503? A straightforward reading of sections 6213(a), 6215, 6501, and 6503(a)(1) and section 313 of the Act says the answer to that question is no.

### A.   *Relevant Provisions*

I begin with first principles.

#### 1.   *The Commissioner's Authority to Assess*

Section 6201(a) both authorizes and requires the Secretary to make assessments of all taxes imposed by the Code which have not been duly paid by stamp.[1] *See also Hibbs v. Winn*, 542 U.S. 88, 100 (2004) (citing I.R.C. § 6201(a)). As used in the Code, "the term 'assessment'

---

[1] Although section 6201(a) refers to the "Secretary," the Code defines that term to mean "the Secretary of the Treasury or his delegate." I.R.C. § 7701(a)(11)(B); *see also* I.R.C. § 7701(a)(12) (defining the term "or his delegate"). The Secretary has delegated these duties to the Commissioner, who in turn has delegated them to other Internal Revenue Service (IRS) officials. *See Farhy v. Commissioner*, No. 10647-21L, 160 T.C., slip op. at 5 (Apr. 3, 2023); Treas. Reg. §§ 301.6201-1(a), 301.7601-1, 301.7701-9.

involves a 'recording' of the amount the taxpayer owes the Government." *Id.* (quoting I.R.C. § 6203). As the Supreme Court has explained, "[t]he 'assessment' is 'essentially a bookkeeping notation.'" *Id.* (quoting *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976)). It "is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing*, 423 U.S. at 170 n.13 (citing I.R.C. § 6203).

> An assessment is made "by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." [I.R.C.] § 6203. See also M. Saltzman, IRS Practice and Procedure ¶ 10.02, pp. 10–4 to 10–7 (2d ed. 1991) (when Internal Revenue Service (IRS) signs "summary list" of assessment to record amount of tax liability, "the official act of assessment has occurred for purposes of the Code").

*Winn*, 542 U.S. at 100 (footnotes omitted); *see also United States v. Dixieline Fin., Inc.*, 594 F.2d 1311, 1312 (9th Cir. 1979) (collecting cases) ("[An assessment] consists of no more than the ascertainment of the amount due and the formal entry of that amount on the books of the secretary.").

### 2. *Section 6501 Limitation on Assessment*

The Commissioner's authority to make assessments is limited in important respects. One such limitation is found in section 6501, titled "Limitations on assessment and collection," which limits the time during which the Commissioner may assess. As relevant here, it provides:

> General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer . . . .

I.R.C. § 6501(a). One of the exceptions to the general rule is set out in section 6501(c)(3). It provides that, if a required return is not filed, "the

tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."[2] I.R.C. § 6501(c)(3).

The command of section 6501(a) is mandatory—"the amount of any tax . . . shall be assessed" within the prescribed time, unless an exception applies. When a taxpayer properly raises the limitation of section 6501 as a defense against assessment, the Commissioner has the burden of showing that the assessment was (if already made) or would be (if not made yet) timely. *See, e.g.*, *Mecom v. Commissioner*, 101 T.C. 374, 382 (1993) (collecting authorities and holding that "[t]he bar of the statutory period of limitation is an affirmative defense" and that once the taxpayer "has established a prima facie case that the statutory period of limitation precludes [the Commissioner] from making any assessment . . . the burden of going forward shifts to [the Commissioner]"), *aff'd*, 40 F.3d 385 (5th Cir. 1994) (unpublished table decision); *see also* Michael I. Saltzman & Leslie Book, *IRS Practice and Procedure* ¶ 5.02[3] (2023), Westlaw IRSPRAC.

### 3.  *Section 6213 Prohibition on Assessment*

Another limitation on assessment is found in section 6213. For taxes that are subject to deficiency procedures (like the tax imposed by section 4973),[3] with exceptions not relevant here, the Commissioner may not make an assessment without first issuing a notice of deficiency and waiting for a required period. Section 6213(a), titled "Time for filing petition and restriction on assessment," provides:

> Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed . . . , the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. [With exceptions not relevant here,] no assessment of a deficiency in respect of any tax imposed by . . . chapter . . . 43 [where section 4973 is found] . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been

---

[2] If an income tax return is filed earlier than the date on which it is due, section 6513(a) treats that return as if it was filed on the relevant due date. For example, an income tax return due on April 15, but filed on April 9, is treated for purposes of the Code as if it was filed on April 15.

[3] The term "deficiency" is defined in section 6211, and relevant procedures are set out in sections 6212 through 6216.

mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

And, if the Commissioner were to act in contravention of the restrictions set out above, section 6213(a) further provides that

the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of [section 6213(a)].

### 4. *Coordination of Section 6501 and 6213 Rules*

Section 6503, titled "Suspension of running of period of limitation," coordinates the requirements of sections 6501(a) and 6213. Sensibly, the provision extends the deadline in section 6501 for the Commissioner to make an assessment until after the prohibition in section 6213 has expired. As relevant here, section 6503(a)(1) provides:

The running of the period of limitations provided in section 6501 . . . on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency . . . shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

### 5. *Assessment After Tax Court Decision Becomes Final*

Section 6215(a) rounds out the picture by providing:

If the taxpayer files a petition with the Tax Court, the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed and shall be paid upon notice and demand from the

Secretary. No part of the amount determined as a deficiency by the Secretary but disallowed as such by the decision of the Tax Court which has become final shall be assessed or be collected by levy or by proceeding in court with or without assessment.

### 6. *Import of Relevant Provisions*

As we have previously explained, these carefully interwoven provisions have the following effects:

> The notice of deficiency triggers three separate but interrelated events. The mailing of a notice of deficiency tolls the running of the period of limitations on assessment or collection of any deficiency. Sec. 6503(a)(1). The mailing of a notice of deficiency starts the running of the 90-day (or 150-day) period for filing a petition in this Court. Sec. 6213(a). And the mailing of a notice of deficiency also bars the Commissioner from making any assessment or collection during that 90-day (or 150-day) period and, if a petition is filed in the Court, bars such assessment or collection until the decision of the Tax Court has become final.

*Frieling v. Commissioner*, 81 T.C. 42, 46–47 (1983) (footnotes omitted).

Moreover, these effects are fully logical. The text of section 6501(a) focuses on the timing of assessment, which (as already noted) is the "recording [of] the liability of the taxpayer in the office of the Secretary." *Winn*, 542 U.S. at 100 (quoting I.R.C. § 6203). Because of section 6213(a) (and with exceptions not relevant to the analysis here), the recording of the liability for a case that is subject to deficiency procedures may not occur until this Court (if review is sought) enters a decision and an appellate review is complete. And that may be long after the three-year period specified in section 6501. Therefore, to permit taxpayers to seek judicial review (as contemplated by section 6213(a)) of any deficiencies the Commissioner determines, while at the same time preserving the Commissioner's ability to assess tax with respect to any deficiencies the courts uphold, section 6503 suspends the limitations period set out in section 6501 while the judicial proceedings are not yet final and for 60 days thereafter. And section 6215 requires the assessment of "the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final." Section 6503's suspension allows the Commissioner to satisfy this requirement by assessing

the amount this Court determines during the 60 days after our decision becomes final, once the prohibition of section 6213(a) is lifted.

The upshot of these provisions is that a taxpayer who asserts in a deficiency proceeding in our Court that the relevant limitations period under section 6501 has expired in effect asks us to evaluate whether the period had expired on the date the notice of deficiency was sent. *Cf. Commissioner v. Lundy*, 516 U.S. 235, 244 (1996) ("In most cases, the notice of deficiency must be mailed within three years from the date the tax return is filed." (first citing I.R.C. §§ 6501(a), 6503(a)(1); and then citing *Badaracco v. Commissioner*, 464 U.S. 386, 389, 392 (1984)). That is because, if the limitations period under section 6501 has not expired when the notice of deficiency is sent, it will automatically be suspended by section 6503(a)(1) and will pose no bar to the Commissioner's assessment authority. As we put it in a reviewed opinion in *Blak Investments v. Commissioner*, 133 T.C. 431, 435 (2009), "[u]nder the general rule set forth in section 6501(a), the [IRS] *is required to* assess tax (*or send a notice of deficiency*) within 3 years after a Federal income tax return is filed." (Emphasis added.)[4]

B.     *Section 6501(l) and Section 313(a) of the Act*

In addition to understanding these first principles, resolving this case also requires a discussion of an amendment to section 6501 made in 2022. As the opinion of the Court explains, section 313(a) of the Act amended section 6501(*l*) to add a new paragraph, providing as follows:

> (4) Individual retirement plans.—
>     (A) In general.—For purposes of any tax imposed by section 4973 or 4974 in connection with an individual retirement plan, the return referred to in this section shall include the income tax return filed by the person on whom the tax under such section is imposed for the year in which the act (or failure to act) giving rise to the liability for such tax occurred.
>     (B) Rule in case of individuals not required to file return.—In the case of a person who is not required to file an income tax return for such year—

---

[4] The opinion of the Court appears to agree that the relevant issue is whether the notice of deficiency was timely issued, observing that Mr. Couturier "requests a ruling that the period of limitations on assessment imposed by the newly enacted section 6501(*l*)(4) renders the notice of deficiency for taxable years 2004–2008 untimely." Op. Ct. p. 5.

(i) the return referred to in this section shall be the income tax return that such person would have been required to file but for the fact that such person was not required to file such return, and

(ii) the 3-year period referred to in subsection (a) with respect to the return shall be deemed to begin on the date by which the return would have been required to be filed (excluding any extension thereof).

(C) Period for assessment in case of income tax return.—In any case in which the return with respect to a tax imposed by section 4973 is the individual's income tax return for purposes of this section, subsection (a) shall be applied by substituting a 6-year period in lieu of the 3-year period otherwise referred to in such subsection.

(D) Exception for certain acquisitions of property.— In the case of any tax imposed by section 4973 that is attributable to acquiring property for less than fair market value, subparagraph (A) shall not apply.

Section 313(b) of the Act, 136 Stat. at 5349, provided that "[t]he amendments made by this section shall take effect on the date of the enactment of this Act [i.e., December 29, 2022]."

As even a cursory review of the text of section 313 of the Act shows, while of course changing section 6501, the amendment says nothing at all about section 6503 or section 6215. It does not purport to lift any suspensions that had already taken effect under section 6503(a)(1) by December 29, 2022, nor does it contain any provisions indicating that its reach expands to pending cases that would otherwise have been governed by section 6503(a)(1) (and eventually section 6215) as of the time of the Act's enactment.

C.    *Application to Mr. Couturier*

A straightforward application of the provisions set out above suffices to dispose of the Motion.

Mr. Couturier filed his income tax returns for the years at issue on April 11, 2005, April 15, 2006, April 15, 2007, October 9, 2008, and April 15, 2009, respectively. The Commissioner issued the Notice on June 10, 2016. Although that date is more than three years after each of these returns was filed, the Commissioner maintains that the period

of limitations has not run because of the exception provided in section 6501(c)(3). In the Commissioner's view, under our decision in *Paschall v. Commissioner*, 137 T.C. 8 (2011), Mr. Couturier was required to file Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to report his liability for tax under section 4973 but did not, thus making section 6501(c)(3) applicable.[5]

Given the posture of this case (Mr. Couturier is the one moving for partial summary judgment), we must construe factual materials and inferences drawn from them in the light most favorable to the Commissioner. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). We must therefore assume that, as of June 10, 2016, the facts here justified the application of section 6501(c)(3) (as the Commissioner contends). Thus, for purposes of our analysis we must assume that, as of that date, the Commissioner would have been authorized (but for section 6213) to assess the deficiencies determined in the Notice. Mr. Couturier timely filed a Petition in our Court seeking a redetermination of the deficiencies the Commissioner determined, thus triggering section 6503. Under section 6503(a)(1), the running of the limitations period was "suspended" on June 10, 2016, and remains suspended until our decision in this case becomes final "and for 60 days thereafter." Accordingly, during this 60-day period, the Commissioner may permissibly assess the relevant tax.

The amendment adopted by section 313(a) of the Act made no change to how section 6503 operates. Its text makes no mention of section 6503 and does not purport to affect the application of a suspension already in effect at the time of its adoption.[6] Therefore, under the law as it exists today, there is no bar to the Commissioner's eventually assessing any deficiency determined once our decision becomes final, during the 60-day period after the section 6213(a) prohibition is lifted. Indeed, section 6215 would require the Commissioner to do so. *See* I.R.C. § 6215 ("[T]he entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed and shall be paid upon notice and demand from the Secretary."). In short,

---

[5] For a discussion of the disputed issues of fact on this point, see the Order issued by the Court on April 8, 2019, denying each party's Motion for Partial Summary Judgment on the limitations issue.

[6] For example, section 313 of the Act did not provide that the amendment applied to returns filed on or before the date of enactment if the period of limitations had not expired as of such date, a formulation Congress used when amending section 6501(c)(8) in 2010. *See* Hiring Incentives to Restore Employment Act (HIRE Act), Pub. L. No. 111-147, § 513(d), 124 Stat. 71, 112 (2010).

given the posture of the case and the inferences we must draw in favor of the nonmovant, Mr. Couturier has not shown that the limitations period has run or that he is entitled to judgment as a matter of law.

D.     *Mr. Couturier's Misplaced Reliance on Section 6501(l)(4)*

Mr. Couturier contends that the addition of section 6501(*l*)(4) by section 313(a) of the Act requires a different outcome. As the opinion of the Court observes, he contends that "Congress intended that new § 6501(*l*)(4) apply to all [section 4973] disputes with the IRS . . . that were pending as of the date of enactment." Op. Ct. p. 8. But as shown above, the text of section 313 of the Act simply does not speak to cases "that were pending [in this Court] as of the date of enactment," nor to the suspension of the limitations period set out in section 6503(a)(1) for cases to which that rule had already become applicable by December 29, 2022. Mr. Couturier offers no textual argument to the contrary. *See also Badaracco v. Commissioner*, 464 U.S. at 392 ("[L]imitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973))); *Tice v. Commissioner*, No. 24983-15, 160 T.C., slip op. at 4 (Apr. 10, 2023) ("In effect, a period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense. Absent Government consent, no limitations defense exists." (quoting *Lucia*, 474 F.2d at 570)).

Moreover, Congress knows how to make limitations provisions applicable to pending cases. *See, e.g.*, Taxpayer First Act, Pub. L. No. 116-25, § 1203(b), 133 Stat. 981, 988 (2019) ("The amendments made by this section shall apply to petitions or requests filed or pending on or after the date of the enactment of this Act."); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, § 422(b), 129 Stat. 2242, 3123 (2015) ("The amendments made by this section shall apply to cases pending as of the day after the date of the enactment of this Act . . . ."); Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7731(d), 103 Stat. 2106, 2402 ("The amendments made by this section shall apply to positions taken . . . in proceedings which are pending on [December 31, 1989.]"); *Sutherland v. Commissioner*, 155 T.C. 95, 101–04 (2020) (discussing the difference between petitions filed and cases pending). It did not do so here.

In light of the text of section 6503(a)(1), Congress's decision not to address section 6503(a)(1) or to provide in section 313 of the Act a rule

applicable to pending cases is dispositive. Mr. Couturier's Motion must therefore be denied.

II.    *Refraining from Addressing Any Broader Issues Concerning the Potential Application of Section 6501(l)(4)*

The analysis set out above fully disposes of Mr. Couturier's Motion. Therefore, there is no need to opine on the potential broader implications of section 6501(*l*)(4). As the Chief Justice (then a judge on the D.C. Circuit) has observed, where "a sufficient ground [exists] for deciding [a] case, . . . the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *PDK Labs Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment); *see also Stromme v. Commissioner*, 138 T.C. 213, 218 n.8 (2012) ("For now, the better course is 'to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.'" (quoting *Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955))); *McLaine v. Commissioner*, 138 T.C. 228, 242 (2012) (same).

III.    *The Opinion of the Court's Mistaken Reading of the Effective Date Provision in Section 313(b) of the Act*

The good judgment of the guidance set out in Part II above is apparent in a case like this one, where the opinion of the Court's broader-than-necessary holding reaches the wrong result in circumstances involving taxpayers not before the Court. To summarize, instead of confining its analysis to the facts before it,[7] the opinion of the Court announces a holding that applies both to taxpayers who had cases pending in our Court at the time the Act was adopted and to those who did not. As the opinion of the Court puts it, section 6501(*l*)(4) applies only to tax returns filed after December 29, 2022. *See* op. Ct. pp. 8, 10. In the opinion of the Court's view, therefore, section 6501(*l*)(4) has no application at all to earlier years, whether or not the Commissioner has taken any action against a particular taxpayer. It reaches this conclusion by (1) interpreting section 313(b) of the Act (the effective date provision) as focused on the filing of returns rather than the making of assessments and (2) purporting to resolve any ambiguity in the provision by applying the

---

[7] That is, a case which has been pending in our Court since September 7, 2016, following a timely Notice and Petition, and in which, therefore, the period of assessment has been suspended since the Notice was issued.

presumption against retroactivity. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). I explain my disagreement with both points in the sections that follow.

A.   *Focus of Section 6501 and the Proper Question Before Us*

Section 313(b) of the Act provides simply that "[t]he amendments made by this section [i.e., the addition of paragraph (4) to section 6501(*l*)] shall take effect on the date of the enactment of this Act [i.e., December 29, 2022]." In interpreting this provision, the opinion of the Court fails to appreciate that the focus of section 6501 is on placing limitations on the Commissioner's authority to make an assessment (and providing corresponding protection from stale claims to taxpayers). That is the provision's raison d'etre. Each of its subsections must be read in light of that focus. Thus, Congress's adoption of section 6501(*l*)(4) was directed to telling the Commissioner how he should exercise his power of assessment. And the effective date provision set out in section 313(b) of the Act should be read accordingly, to apply to any assessment made (or, in the deficiency context, any notice of deficiency issued) on or after December 29, 2022, taking into account the rules of section 6503(a)(1). Text and context both point the same way.

The opinion of the Court, however, views the amendment as being focused on "specif[ying] the consequences of filing tax returns," rather than as addressing the Commissioner's assessment power. Op. Ct. p. 8. As the opinion of the Court puts it: "Because this amendment specifies the consequences of filing tax returns, it is most naturally read to apply in the case of returns filed on or after the effective date." Op. Ct. p. 8. Or as the opinion of the Court further states: "In short, section 6501(*l*)(4) specifies the consequences of filing tax returns. Because Congress provided that this amendment 'shall take effect on the date of the enactment,' we think the amendment is logically read to apply to tax returns filed on or after the date of enactment." Op. Ct. p. 10. But the assumption the opinion of the Court makes (that the focus of the amendment is to specify consequences of filing returns) does not hold up to scrutiny, and the conclusion the opinion of the Court reaches based on that assumption (that the "most natural[]" or "logical[]" reading is that the amendment applies to returns filed after December 29, 2022) does not follow.

As I have demonstrated above, and as the title of the provision ("Limitations on assessment and collection") helpfully notes, section 6501 sets out limitations on the Commissioner's authority to assess

taxes. Its focus is on restrictions on the Government's power to assess and collect. Courts have consistently understood the provision this way. *See, e.g.*, *Bufferd v. Commissioner*, 506 U.S. 523, 525–26 (1993) ("Code § 6501(a) establishes a generally applicable statute of limitations providing that the Internal Revenue Service may assess tax deficiencies within a 3-year period from the date a return is filed."); *Badaracco v. Commissioner*, 464 U.S. at 388 ("[Section 6501(a)] establishes a general three-year period of limitations 'after the return was filed' for the assessment of income and certain other federal taxes.").

While the filing of returns is of course a relevant element in circumscribing the Commissioner's authority to assess—one must know when the return was filed to determine whether the three-year, six-year, or indefinite period of limitations has begun to run—the principal thrust of section 6501 is not on "the consequences of filing returns," as the opinion of the Court assumes. Myriad other Code provisions focus on the consequences of filing returns. *See, e.g.*, I.R.C. § 6651(a)(1) (imposing addition to tax for failure to timely file income tax return); I.R.C. § 6651(a)(2) (imposing addition to tax for failure to timely pay income tax shown on an income tax return); I.R.C. § 6698 (imposing penalty for failure to file partnership returns); I.R.C. § 6699 (imposing penalty for failure to file S corporation return). Section 6501 does not need to, as that is not its function. The principal question section 6501 asks is "By when must the Commissioner assess the taxes the Code imposes?" Its principal question is not "What are the consequences of filing a return?"

A simple observation illustrates the point. The limitation on assessment set out in section 6501 applies not only to taxes required to be shown on returns, but also to taxes payable by stamp, when a return need not be filed. Yet, section 6501 imposes a limit on the Commissioner's authority to assess taxes payable by stamp as well.[8] In short, the key focus of section 6501 is on the Commissioner's exercise of his authority to assess (not on the filing of returns). The focus of the amendment adopted by section 313 of the Act is the same.[9] The amendment

---

[8] On the flip side, the Commissioner's authority to assess remains unimpeded and the tax may be assessed "at any time" "[i]n the case of a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1). In such a case, the filing of the return does not have the claimed "consequence" of starting the period of limitations, again undercutting the opinion of the Court's view of the function of section 6501.

[9] Indeed, section 6501(*l*)(4)(B) focuses entirely on the period of limitations that is to be applied to taxpayers who are not required to file income tax returns and protects such taxpayers from late assessments even when they file neither an income tax return nor a Form 5329.

governs the Commissioner's actions and tells him how to do his job from the date of enactment forward. The date of the filing of the return is relevant in an ancillary fashion, only insofar as it affects the Commissioner's exercise of his power. It is an opening act so to speak, not the main event. The opinion of the Court is mistaken to assume otherwise.

The opinion of the Court observes that the "amendment says nothing about assessment and does not include that word." Op. Ct. p. 10. The opinion of the Court is incorrect as a technical matter. The amendment does indeed use the word "assessment" in the heading of section 6501(*l*)(4)(C)—styled "Period for *assessment* in case of income tax return." (Emphasis added.) Although titles in the Code do not have legal effect, *see* I.R.C. § 7806(b) (stating that no "descriptive matter relating to the contents of [the Code shall] be given any legal effect"); *see also Rowen v. Commissioner*, 156 T.C. 101, 112 n.9 (2021) (first citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222–23 (1996); and then citing *N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877, 886 n.13 (Fed. Cir. 2018) ("[T]itles [in the Code] have no legal effect . . . .")), the legal rule of section 7806(b) does not cause the word "assessment" to disappear from the amendment.

More importantly, in addition to the actual word in the heading of section 6501(*l*)(4), the references to "assessment" in section 6501(*l*)(4) take the form of cross-references. For example, section 6501(*l*)(4)(C) says that "subsection (a) [recall, this is the subsection stating that taxes 'shall be assessed' within three years] shall be applied by substituting a 6-year period in lieu of the 3-year period otherwise referred to in such subsection." Congress's use of shorthand and cross-references (in the place of the word "assessment") cannot obscure the point that the enactment of section 6501(*l*)(4) has meaning only insofar as it tells us what shall be done with respect to assessments. Take its impact on assessments away and section 6501(*l*)(4) becomes a nullity.[10] In short, the opinion of the Court's rhetorical (and technically incorrect) observation on the absence of the word "assessment" in section 6501(*l*)(4) does not support its conclusion.

---

[10] Section 6501(*l*)(4)(B) reinforces this point. Congress spent more than a third of the words of section 6501(*l*)(4) limiting the Commissioner's powers to assess taxes with respect to taxpayers who are not required to file income tax returns at all. Yet, Congress wanted such taxpayers to receive the benefit of a limitations period and limited the Commissioner's assessment power as to taxes they owed. But the opinion of the Court would seem to suggest such taxpayers remain unprotected because the amendment applies with respect to returns filed after enactment.

The opinion of the Court's mistaken assumption that the amendment focuses on the consequences of filing tax returns rather than on the Commissioner's power to assess leads the opinion of the Court to a further framing error. The opinion of the Court views the question presented as "whether section 6501(*l*)(4) applies retroactively." Op. Ct. p. 5. As I explain below, the answer to that question is no. But that is not the right question here. The right question is whether the adoption of section 6501(*l*)(4) made section 6503(a)(1) (and also section 6215) inapplicable to this case. As I have already discussed, *see* Parts I.B through I.D above, the simple answer to this question is also no.

B.    *Prospective Application of Section 313 of the Act in Cases Where Notices of Deficiency Were Not Issued by December 28, 2022*

The opinion of the Court relies on the presumption against retroactive application of statutes to resolve any ambiguity as to the meaning of the effective date provision. But the Court errs in two material respects. First, applying section 6501(*l*)(4) to future assessments (or notices of deficiency in deficiency cases issued after December 29, 2022) accords with the most natural reading of that section and the effective date provision and is not retroactive.[11] Second, the context in which section 6501(*l*)(4) arose suggests that Congress would be surprised by the conclusion the opinion of the Court reaches. Moreover, even assuming that a retroactivity analysis is appropriate here, it is not clear to me how *Landgraf* applies in a case like the one before us.

1.    *Applying Section 6501(*l*)(4) to Future Assessments Is Not Retroactive.*

The opinion of the Court suggests that applying section 6501(*l*)(4) to future assessments would require applying the provision retroactively. But this is incorrect.

First, on its face, the text of section 313 of the Act does not purport to give the amendment retroactive effect. The amendment affects only the Commissioner's power to assess taxes on or after December 29, 2022. The plain text of section 313(b) of the Act—the amendment "shall take effect on the date of the enactment of this Act"—leaves in my mind no doubt

---

[11] The only potential for retroactivity arises in cases like this one, where the Commissioner issued a notice of deficiency before December 29, 2022. As I discuss further below, that potential is fully mitigated by section 6503(a)(1).

that it governs the Commissioner's actions from that date forward (i.e., prospectively).

To illustrate this point, when issuing notices of deficiency and making assessments after December 29, 2022, in my view the Commissioner must take into account any federal income tax return a taxpayer has filed for the relevant year (not just the filing of Form 5329). If the taxpayer filed a return more than six years earlier and the Commissioner has not yet issued a notice of deficiency, then the Commissioner is precluded from making an assessment. There is nothing retroactive about this result—the new rule constrains the Commissioner's future actions, not his past ones.

The opinion of the Court skips over this scenario, focusing instead on cases like this one, where the Commissioner did issue a notice of deficiency before December 29, 2022. And I agree that there is at least *some* potential for retroactivity in such a case. But again, there is no actual problem because, by congressional design, the running of the period of limitations on assessment is suspended and, under sections 6213(a), 6503(a)(1), and 6215 will remain suspended until 60 days after our decision becomes final. In these cases, therefore, section 6501(*l*)(4) does not retroactively prevent the Commissioner from making an assessment.

Put another way, for notices of deficiency issued on or after December 29, 2022, the Commissioner must take into account the provisions of section 6501(*l*)(4) in determining whether any future assessment would be timely. (For notices of deficiency issued before that date, section 6501(*l*)(4) will not affect the Commissioner's assessment authority because the limitations period has already been suspended under section 6503.) If an income tax return described in section 6501(*l*)(4) has been filed, the computation of the relevant period under section 6501(a) must take that return into account (even if no Form 5329 was filed).[12] Nothing in the text of section 313(b) of the Act indicates that the Commissioner or the courts may ignore this congressional command with respect to income tax returns filed before December 29, 2022, if the Commissioner had not issued a notice of deficiency by that date.[13] And there

---

[12] The same would be true for taxpayers who were not required to file a return and are covered by the provisions of section 6501(*l*)(4)(B).

[13] Again, as I have explained above, the same is true with respect to taxpayers covered by section 6501(*l*)(4)(B) who did not file returns before December 29, 2022.

is nothing retroactive about this approach—again, the rule limits the Commissioner's *future* actions.

This framework finds support in the cases the opinion of the Court relies on. In deciding whether a statute operates retroactively, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269–70; *see also id.* at 291 (Scalia, J., concurring in the judgments) ("The critical issue . . . [when conducting retroactivity analysis is] what is the relevant activity that the rule regulates."). As the foregoing discussion should make clear, giving effect to the congressional command in section 313(b) of the Act does not result in a retroactive application of the amendment. The amendment affects the future (post-enactment) assessment of tax liabilities and, relatedly, the future (post-enactment) issuance of notices of deficiency that determine such liabilities. It leaves assessments based on notices of deficiency issued before December 29, 2022, that are the subject of cases pending in our Court, entirely unaffected. Thus, the amendment attaches new legal consequences to events (i.e., the Commissioner's issuance of notices of deficiency and the making of assessments) that take place after December 29, 2022, and regulates conduct (the Commissioner's) that occurs after that date, implicating no retroactivity concerns.

As the Supreme Court has explained:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct [here, the taxpayer's filing of an income tax return (or the nonfiling of such a return as contemplated by section 6501(*l*)(4)(B) if a return was not required)] antedating the statute's enactment, see *Republic Nat. Bank of Miami* v. *United States*, 506 U. S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment), or upsets expectations based in prior law [here, the Commissioner's expectation of potentially having an unlimited period of limitations when a Form 5329 was not filed].

*Landgraf*, 511 U.S. at 269. As the Court further illustrated:

> Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire

property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards. See [L. Fuller, *The Morality of Law*] 60 [(1964)] ("If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever"). Moreover, a statute "is not made retroactive merely because it draws upon antecedent facts for its operation." *Cox* v. *Hart*, 260 U. S. 427, 435 (1922). See *Reynolds* v. *United States*, 292 U. S. 443, 444–449 (1934); *Chicago & Alton R. Co.* v. *Tranbarger*, 238 U. S. 67, 73 (1915).

*Id.* at 269 n.24.

That is precisely what Congress did here. Under our decision in *Paschall*, the Commissioner may have had an unlimited time to assess tax with respect to a taxpayer who had filed an income tax return (without appropriate disclosures on this issue) but had failed to file Form 5329. Congress thought that inappropriate and imposed a new six-year period of limitations effective on enactment so that a taxpayer who filed an income tax return could get the benefit of a shorter limitations period.[14] By the terms of the effective date provision, the new rule applies to all notices of deficiency issued on or after the date of enactment. That the Commissioner might have expected things to go on as usual with respect to returns filed before December 29, 2022, in reliance on *Paschall*, is no defense. Nor is it a defense that the Commissioner might have invested time in audits with respect to returns filed long ago that he would now be unable to pursue. In this respect, the Commissioner has no greater claim to "unsettle[d] expectations" than the person who "ha[s] begun to construct a casino before the law's enactment" only to have the legislature ban gambling. *Landgraf*, 511 U.S. at 269 n.24.

This conclusion is consistent with how courts of appeals have applied other amendments shortening a statute of limitations period. For example, in *St. Louis v. Texas Worker's Compensation Commission*, 65 F.3d 43, 44 (5th Cir. 1995), the U.S. Court of Appeals for the Fifth Circuit addressed a discrimination action under the Age Discrimination in Employment Act (ADEA).[15] When the allegedly discriminatory conduct

---

[14] A taxpayer who was not required to file an income tax return at all received the benefit of a three-year period of limitations. *See* I.R.C. § 6501(*l*)(4)(B).

[15] 29 U.S.C. §§ 621–634.

occurred, the relevant limitations period was two years. *Id.* at 45. After the underlying conduct occurred, but before the plaintiff in the case filed suit, Congress changed the limitations period to require that a plaintiff bring the action within 90 days after receiving a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). *Id.* The plaintiff filed a lawsuit within two years of the allegedly discriminatory conduct, but more than 90 days after receiving notice from the EEOC. *Id.* at 44. The district court dismissed the lawsuit for failure to comply with the shorter limitations period. *Id.* On appeal, the plaintiff argued that the applicable period of limitations was not the one in effect when the complaint was filed, but the one in effect when the claim accrued. *Id.* at 45. The Fifth Circuit rejected the argument and held that the 90-day statute of limitations applied to claims filed after the amendment became effective, regardless of when the claim accrued. *Id.*

The Fifth Circuit observed:

[T]he defendant's allegedly discriminatory conduct occurred before the 1991 Act became effective, but the plaintiff filed suit after the 1991 Act became effective. The 1991 Act was in effect throughout the time that [the plaintiff] received his right-to-sue letter from the EEOC to the time he filed his cause of action. The 90-day limitations period was the law in effect when he filed his complaint, and it is the law that applies in this case.

*Id.* Other courts have reached the same conclusion as the Fifth Circuit. *See, e.g.*, *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 889–91 (2d Cir. 1995); *Garfield v. J.C. Nichols Real Est.*, 57 F.3d 662, 664–65 (8th Cir. 1995); *Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997); *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 & n.7 (3d Cir. 2010).

Reasoning by analogy, what matters is what the law is when the notice of deficiency (which is the equivalent of the filing of the complaint) is issued, not what the law was when the relevant return was filed (which is the equivalent of when the cause of action began accruing).

Discussing concerns about retroactivity in the ADEA context, the Fifth Circuit noted:

In this case, the change in the statute of limitations for filing ADEA claims does not have a retroactive effect; it governs the secondary conduct of filing suit, not the

primary conduct of the defendants. Nor does the statute of limitations alter either party's liability or impose new duties with respect to transactions already completed. Section 626(e) does not operate retroactively in the manner *Landgraf* censured.

Indeed, although the defendant frames the issue as one of retroactivity, the issue is not technically one of retroactivity, where a change in the law overturns a judicial adjudication of rights that has already become final. In this case, the statute of limitations is applied to conduct that occurred after the statute's enactment—the plaintiff's filing of the complaint—not to the allegedly discriminatory acts of the defendant. The only issue is which law to apply to the plaintiff's acts.

*St. Louis*, 65 F.3d at 46 (footnotes omitted); *see also, e.g.*, *Steven I.*, 618 F.3d at 414 ("The *Landgraf* analysis is typically controlling on issues of retroactivity, in particular the application of new substantive requirements to conduct that occurred in the past. However, because the statute of limitations in IDEA 2004 governs Steven I.'s conduct in filing the claim, not the School District's conduct giving rise to the claim, we need not engage in a retroactivity analysis."); *Vernon*, 49 F.3d at 889 ("[A]pplying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute. In such a case, the statute is applied to conduct that occurs after the statute's enactment—plaintiff's filing of the complaint—not the defendant's allegedly unlawful acts." (Citations omitted.)).[16]

---

[16] The Fifth Circuit's analysis (and that of the Second, Third, Eighth, and Eleventh Circuits in the cases cited in the text) contradicts the opinion of the Court's assertion that the "amendment effected a substantive change in the law by providing that a different type of tax return—viz., Form 1040, regardless of its contents—would trigger the running of a period of limitations for assessment of section 4973 excise tax." Op. Ct. p. 10. As the courts of appeals explain in the context before them, the change in the statute of limitations does not affect a party's underlying liability. *Cf. Wilson v. Pena*, 79 F.3d 154, 162 (D.C. Cir. 1996) (explaining that extending a limitations period "d[id] not alter the legal effect of any pre-amendment event, nor d[id] it change the remedies available for pre-amendment violations"); *Forest v. U.S. Postal Serv.*, 97 F.3d 137, 139–41 (6th Cir. 1996) (following the *Wilson* decision's analysis and observing that "applying the statute of limitations does not affect the substantive rights of the parties in this case"). Here too the amendment did not change any taxpayer's substantive

Thus, if the Commissioner issues a notice of deficiency after December 29, 2022, he must take the statute of limitations "in effect" when he issues the notice, the equivalent of the complaint. *St. Louis*, 65 F.3d at 45; *Vernon*, 49 F.3d at 890 ("Retroactivity concerns . . . generally do not bar the application of a changed statute of limitations to a complaint filed after the amendment."); *see also Steven I.*, 618 F.3d at 414 (collecting authorities). That is the "secondary conduct" regulated by the statute. *See, e.g.*, *St. Louis*, 65 F.3d at 46; *Vernon*, 49 F.3d at 890. To the extent the opinion of the Court says otherwise with respect to returns filed (or not filed) by taxpayers who are not before the Court, I believe it is in error.[17] *See also, e.g.*, *Walsche v. First Invs. Corp.*, 981 F.2d 649, 654 (2d Cir. 1992) ("Where a new rule alters substantive rights, to apply the new rule prospectively means to apply it to claims based on conduct occurring from that time forward. However, where . . . the new rule announces a period of limitations, the conduct to which it refers is the plaintiff's conduct relating to the filing of the claim and not the defendant's conduct giving rise to the claim.").

As I read the Commissioner's briefs in this case, the Commissioner does not ask for as broad a holding as the opinion of the Court appears to provide. In paragraph 15 of his Sur-Reply to Petitioner's Reply to Respondent's First Amended Response to Petitioner's Motion for Partial Summary Judgment filed on November 28, 2023, the Commissioner argues as follows:

> Petitioner states that "Congress has made a legislative judgment that Respondent ought not to be able to pursue deficiencies under section 4973 by issuing a Notice of Deficiency more than six years after the taxpayer has filed their income tax return." *While this is true after December 29, 2022, the date of enactment for SECURE Act 2.0 of 2022, when the notices of deficiency in this case were issued the statute of limitations for assessing and collecting the section 4973 excise tax was open.* I.R.C. § 6501(c)(3); *Paschall v. Commissioner*, 137 T.C. 8 (2011). Therefore, the notices

---

liability. A taxpayer's liability with respect to the excise tax imposed by section 4973 will remain unaltered. The only thing that the amendment changes is the period within which the Commissioner must initiate the process for assessing the tax relating to that liability.

[17] Of course, this analysis does not help Mr. Couturier. The Commissioner issued the Notice to him long before the limitations period was changed, so under the Fifth Circuit's reasoning and that of the other courts of appeals, the Commissioner's action here was timely.

of deficiency at issue in this case are valid for all years at issue (2004 through 2014). I.R.C. §§ 6212(a) and 6213. Respondent issued valid notices of deficiency to petitioner when the statute of limitations was open. Petitioner timely petitioned this Court for a redetermination of those deficiencies. Respondent is barred from assessing the asserted excise taxes until the decision of the Tax Court is final. I.R.C. § 6213(a). Respondent has followed the law as Congress intended at the time it enacted sections 6501(c)(3), 6212, and 6213. Respondent was not "attempting to do what Congress legislated that it should not do."

(Emphasis added.) The emphasized sentence and the sentences that follow seem to me to press a claim that the Commissioner was timely in this case, not that he would be timely with respect to notices of deficiency issued after December 29, 2022, concerning income returns filed six years before that date.[18] But even if the Commissioner were pressing the broader claim, I would reject it.

Congress knows how to draft rules that focus on the dates of the filing of the relevant returns. In other circumstances in section 6501, when Congress intended to focus the effective date on a particular return, it told us so. *See, e.g.*, Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. U., §§ 201(b)(2), 207, 132 Stat. 1159, 1172, 1183 ("[Amended section 6501(c) shall apply] as if included in section 1101 of the Bipartisan Budget Act of 2015.")); Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(f)(3), (g)(1), 129 Stat. 584, 637–38 ("[Amended section 6501(n)] shall apply to returns filed for partnership taxable years beginning after December 31, 2017."); Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, § 2005(b), 129 Stat. 443, 457 ("[Amended section 6501(e)(1)(B)] shall apply to—(1) returns filed after the date of the enactment of this Act, and (2) returns filed on or before such date if the period specified in section 6501 of the [I.R.C.] of 1986 . . . for assessment of the taxes with respect to which such return relates has not expired as of such date."); HIRE Act § 513(d) ("[Amended section 6501(c)(8) and 6501(e)(1)] shall apply to—(1) returns filed after the date of the enactment of this Act; and (2) returns filed on or before such date if the period specified in

---

[18] This case does not present the latter fact pattern. And, for the reasons discussed in Part II above, I would have left answering that question to a case when the issue was properly presented. But because the opinion of the Court does otherwise, I proceed to explain why its analysis is mistaken.

section 6501 of the [I.R.C.] of 1986 . . . for assessment of such taxes has not expired as of such date.").

Here, by contrast, Congress told us that the new rule was effective on enactment. To make that rule applicable only to returns filed after December 29, 2022, the opinion of the Court adds to the effective date provision words Congress did not use. Instead of reading the provision as "tak[ing] effect on the date of the enactment of this Act," the opinion of the Court interprets the provision as "tak[ing] effect [with respect to returns filed] on [or after] the date of the enactment of this Act." I would read the provision as Congress wrote it and give it the effect its words bear. *See, e.g., EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) ("The problem with [the proposed] approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province."); *Badaracco v. Commissioner*, 464 U.S. at 398 ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

The framing error described above leads the opinion of Court to unduly constrict the application of the amendment Congress adopted. Under the reading of section 313(b) of the Act that the opinion of the Court adopts, the amendment adopted by section 313 of the Act has no effect for any taxpayers who filed income tax returns before December 29, 2022. Put differently, for taxpayers who filed their income tax returns (but filed no Forms 5329) before December 29, 2022, and those who did not file income tax returns because they were not required to, under the opinion of the Court, the Commissioner appears to remain forever free to start an examination and issue a notice of deficiency with respect to any taxes due under section 4973. This is a misreading of section 313(b) of the Act.

Under my reading of section 313(b) of the Act, the Commissioner no longer possesses the authority to assess any taxes imposed by section 4973 if the taxpayer filed an income tax return more than six years ago (or was not required to file such a return, as provided in section 6501(*l*)(4)(B))[19] and a notice of deficiency with respect to those taxes is not issued within the six-year period (or the three-year period, for a taxpayer who was not required to file an income tax return). As relevant here, the only exception to this rule is for taxpayers (like Mr. Couturier)

---

[19] For taxpayers who were not required to file a return, the lookback period is three years, rather than six. *See* I.R.C. § 6501(*l*)(4)(B).

to whom notices of deficiency were already issued before December 29, 2022, and whose circumstances are governed by section 6503(a)(1). The text of section 313(b) of the Act and the related Code provisions compel this result.

2. *The Context in Which Section 6501(l)(4) Arose Points to the Same Conclusion.*

Nor is it clear to me why Congress would enact the rule the opinion of the Court adopts in view of the context of the amendment. Section 313 of the Act plainly overturned our holding in *Paschall*, which Congress viewed as taking taxpayers by surprise. In this context, it would seem unexpected that Congress would defer the impact of the enacted relief until six years into the future. *Cf. Lyons v. United States*, 99 Fed. Cl. 552, 557 (2011) ("The Court believes it would be a great surprise to the Congresses of 1938 and 2004 to discover that the law they passed . . . might not assist any person who was wrongfully imprisoned at that time, but possibly only those whom the Government would erroneously convict in the future.").

The opinion of the Court claims to "find no evidence anywhere in the Act or its legislative history that Congress intended section 6501(*l*)(4) to apply to pending cases, to prior tax years, or to tax returns filed for prior tax years." Op. Ct. p. 13. But the support the opinion cites for this statement is a House Report dated March 29, 2022, that describes an older, materially different version of section 313 of the Act never passed by the Senate. *See* op. Ct. p. 13 n.4 (citing H.R. Rep. No. 117-283, pt. 1, at 139–40 (2022)). And "[f]or those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), a later summary (Summary) prepared by the Senate Finance Committee and discussing the final version of section 313 of the Act casts serious doubt on the opinion of the Court's claim. S. Comm. on Fin., 117th Cong., *SECURE 2.0 Act of 2022* (2022), https://www.finance.senate.gov/imo/media/doc/Secure%202.0_Section%20by%20Section%20Summary%2012-19-22%20FINAL.pdf.

To simplify the Act's complicated procedural history, because the Act moved through Congress quickly at the end of 2022, the Senate Finance Committee did not produce a committee report for the proposed legislation. But it did prepare the Summary, which describes the Act and reflects the significant changes that had been made to section 313

of the Act since the version passed by the House in March.[20]  The Summary said the following about section 313 of the Act:

> In general, these changes are intended to ensure that there is a reasonable period of limitations for violations of which taxpayers *were not aware* and thus *did not file an excise tax return*, while retaining existing law in fact scenarios that involve a bargain sale.

Summary at 11 (emphasis added).  The references are in the past tense.  They would seem to suggest that, contrary to the opinion of the Court's assertion, at least the Senate Finance Committee had in mind "prior tax years" and "tax returns filed for prior tax years."  Op. Ct. p. 13.  It bears repeating that unlike the House Report cited by the opinion of the Court, this excerpt from the Summary describes the actual text passed by Congress.  And the references in the Summary would make no sense if the amendment was intended to help only people who in the future (after December 29, 2022) fail to file Forms 5329.  In that case, one would have expected the Summary to say "these changes are intended to ensure that there is a reasonable period of limitations for violations of which taxpayers *are not aware* and thus *do not file* an excise tax return."  In short, the legislative history undercuts the conclusion reached by the opinion of the Court.

### 3. *The Opinion of the Court's Application of* Landgraf *Is Unnecessary and Fraught with Challenges.*

For the reasons I have set out above, I do not believe section 313(b) of the Act applies retroactively.  I therefore have no reason to apply the framework set out in *Landgraf*.  But reviewing the opinion of the Court's application of that framework to this case leaves me with some reservations.

It is not altogether clear to me how the *Landgraf* framework should be applied in a case where Congress changes the rules that

---

[20] The changes included two added subparagraphs—section 6501(*l*)(4)(C) and (D)—which were incorporated into section 313 of the Act as enacted.  As already discussed, section 6501(*l*)(4)(C) is the provision setting forth a six-year—rather than a three-year—period of limitations when an income tax return is filed.  *Compare* Act § 313(a) (adding the current section 6501(*l*)(4)) *and* S. Amend. 6552 to H.R. 2617, 117th Cong., div. T, § 313(a) (2022), *reprinted in* 168 Cong. Rec. S7580–81 (daily ed. Dec. 19, 2022), *with* Securing a Strong Retirement Act of 2022, H.R. 2954, 117th Cong. § 313 (2022) (proposing to amend section 6501(*l*) by adding a new paragraph (4) that included the text of only subparagraphs (A) and (B) of the current section 6501(*l*)(4)).

specify how one of its agents, the Commissioner, should carry out his responsibilities. I am not sure that *Landgraf's* generic reference to statutes that "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *Landgraf*, 511 U.S. at 280, was intended to cover rules Congress adopts constraining (through the statute of limitations) the authority of the Federal Government to assess and collect taxes, *cf. Vernon*, 49 F.3d at 890 ("The conduct to which the statute of limitations applies is not the primary conduct of the defendants, the alleged discrimination, but is instead the secondary conduct of the plaintiffs, the filing of their suit. The statute as applied here impaired no rights possessed by either party, *see Crane v. Hahlo*, 258 U.S. 142, 147 (1922) ('No one has a vested right in any given mode of procedure.'), increased neither party's liability, nor imposed any new duties with respect to past transactions. The statute cannot be understood to operate retroactively in the manner criticized in *Landgraf*, and its application here was 'unquestionably proper.' *See Landgraf*, —— U.S. at ——, 114 S. Ct. at 1501.").

It seems to me that Congress's decision to alter the powers of its agent, the Commissioner, in a way that favors taxpayers is quite different from a legislature's making changes to the rights of an individual or company. The opinion of the Court observes that "[t]he Government, like a private individual, may be 'a party' whose rights are impaired by the retroactive application of a statute." Op. Ct. p. 11. I agree that the Federal Government may be a "party" whose rights may be impaired by the actions of a state government, as they were in *United States v. Bacon*, 82 F.3d 822, 823–24 (9th Cir. 1996), the decision the opinion of the Court cites. But I am less certain that the Federal Government should be viewed as a "party" whose "rights" are "impaired" when the U.S. Congress has duly enacted a law that changes the rules for how long the Federal Government has to assess federal taxes, a quintessential government function.

In addition, as has been long recognized, "statutes of limitations go to matters of remedy and do not involve the destruction of fundamental rights. Thus, the extent to which a tax assessment is barred by time is within exclusive Congressional control . . . ." *Lucia*, 474 F.2d at 570 (footnote omitted); *see also Garfield*, 57 F.3d at 664–65 (rejecting the plaintiffs' argument that the statute of limitations should be treated as a substantive limit on their case rather than as a procedural limit on the remedy).

The Supreme Court observed in *Landgraf* that "the great majority of [its] decisions relying upon the antiretroactivity presumption have involved intervening statutes burdening private parties." *Landgraf*, 511 U.S. at 271 n.25 (collecting authorities). The Court further observed, however, that it had also "applied the presumption in cases involving new monetary obligations that fell only on the government." *Id.* (first citing *United States v. Magnolia Petroleum Co.*, 276 U.S. 160 (1928); and then citing *White v. United States*, 191 U.S. 545 (1903)).

Unlike the statute at issue in *Magnolia Petroleum*, which addressed the payment of interest on a refund claim and affected how much interest the taxpayer would receive, or that in *White*, which addressed the computation of pay for Navy officers, section 6501(*l*)(4) does not require the expenditure of any government funds. It simply imposes a bar on government action. In that respect, perhaps section 6501(*l*)(4) is better analogized to a waiver of sovereign immunity. As the Ninth Circuit has observed in connection with that topic,

> statutes that waive the United States's sovereign immunity do not implicate the concerns of "fair notice, reasonable reliance, and settled expectations" that undergird the usual presumption against retroactive application. *Landgraf*, 511 U.S. at 270. In contrast to laws that spell out rules of conduct by which citizens' behavior will be judged, a waiver of immunity only applies to the sovereign. In the former case, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* at 265. These considerations are inapplicable in the latter case.

*State Eng'r of State of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 812 (9th Cir. 2003). As in the case of a waiver of sovereign immunity, here section 313 of the Act shortened the period during which the Commissioner could assess tax in certain circumstances. The provision "only applies to the sovereign" and would not appear to implicate concerns of "fair notice, reasonable reliance, and settled expectations."

Or perhaps the *Landgraf* Court's analysis of procedural rules might provide the appropriate lens for analysis here. *Cf. Vernon*, 49 F.3d at 890 (treating a statute of limitations as a procedural rule); *Anderson v. Unisys Corp.*, 52 F.3d 764, 765 n.1 (8th Cir. 1995)

("[W]e consider the limitations period a procedural rather than a substantive requirement, and have found that 'courts apply the procedure in effect when the case is before them.'" (quoting *United States v. Higgins*, 987 F.2d 543, 546 (8th Cir. 1993))). *But cf. Vernon*, 49 F.3d at 892 (Cabranes, J., concurring) (observing that statutes of limitations "lie on the cusp of the procedural/substantive distinction"). As the Supreme Court noted, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275. *But see id.* at 291 (Scalia, J., concurring in the judgments) (explaining that, for purposes of a retroactivity analysis, "a *procedural* change should no more be presumed to be retroactive than a *substantive* one"). And "[b]ecause rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.* at 275.[21]

In any event, the difficulties with how to apply the *Landgraf* framework here are all avoided by following the first principles discussed in Part I above and resolving this case as discussed there. Any concerns that "[t]he IRS could not possibly have been aware, during an examination that concluded in 2016, that its right to assess tax would be restricted by a six-year period of limitations enacted in 2022," op. Ct. p. 12, would be fully addressed by giving effect to the plain text of sections 6213(a) and 6503(a)(1) and section 313(b) of the Act, as discussed in Part I.C above. But such concerns do not justify the opinion of the Court's decision to apparently leave the statute of limitations open for taxpayers not before us to whom the Commissioner still has not issued a notice of deficiency. As to them, the IRS has been on notice since December 29, 2022, that its ability to assess tax is restricted.

IV. *Conclusion*

I would deny the Motion for the reasons stated above. Because the opinion of the Court reaches its decision on different grounds, sweeps much more broadly than it should, and gets to the wrong

---

[21] The Court in *Landgraf* also observed that "the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime . . . ." *Landgraf*, 511 U.S. at 275 n.29. This observation is fully consistent with the rules discussed and conclusion reached in Part I above. A new rule about the timeliness of future notices of deficiency (section 6501(*l*)(4)) does not govern a notice of deficiency previously issued and already challenged in a case pending in the Tax Court.

conclusion with respect to parties not before the Court, I respectfully concur in the result only.

GREAVES, *J.*, agrees with this opinion concurring in the result.

BUCH, *J.*, agrees with Parts I and II of this opinion concurring in the result.

URDA, *J.*, agrees with Part I of this opinion concurring in the result.

FOLEY, *J.*, dissenting: The opinion of the Court holds that "section 6501(*l*)(4) applies purely prospectively" to tax returns filed on or after December 29, 2022, and in support of this holding, asserts that this is "the most natural reading" of the provision. *See* op. Ct. p. 13. To the contrary, the most "natural reading" is to simply follow the statute's plain language. Indeed, nothing in the Consolidated Appropriations Act, 2023 (Act), Pub. L. No. 117-328, div. T, § 313(b), 136 Stat. 4459, 5349, limits the applicability of section 6501(*l*)(4) to tax returns filed on or after December 29, 2022. The effective date rule is unambiguous. *E.g.*, *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("[I]f the statutory language is clear, we need look no further than that language . . . in determining the meaning of the statute."); *United States v. Hoffman*, 794 F.2d 1429, 1432 (9th Cir. 1986) ("The plain meaning of a statute is controlling absent a clearly expressed Congressional intention to the contrary." (quoting *North Dakota v. United States*, 460 U.S. 300, 312 (1983))). The opinion of the Court, however, reaches a result-oriented conclusion that has a tenuous connection to the statutory language.

Congressional scriveners do not need our drafting assistance. While Congress implemented narrower effective dates for other provisions in the Act, it, notably, did not do so here. *See, e.g.*, Act § 302(c), 136 Stat. at 5339 (providing that the amendment applies to taxable years beginning after the date of enactment of the Act); *id.* § 311(b)(2), 136 Stat. at 5347 (providing that qualified birth or adoption distributions made on or before the date of enactment of the Act will have a three-year period of limitations from the date the distribution was received). "This is the highly reticulated Internal Revenue Code, which uses language, lots of language, with nearly mathematic precision." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 789 (6th Cir. 2017), *rev'g* T.C. Memo. 2015-119. Creating this temporal restriction supplants Congress's judgment with our own.

Section 6501(*l*)(4) became effective on December 29, 2022. Because petitioner filed only Forms 1040, U.S. Individual Income Tax Return, section 6501(a) mandates that the Commissioner must have assessed the section 4973 liability, or sent a notice of deficiency, prior to the expiration of the six-year period. *See Blak Invs. v. Commissioner*, 133 T.C. 431, 435 (2009). The Commissioner failed to do so. Accordingly, petitioner's Motion for Partial Summary Judgment should be granted. "[F]or where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'"—not ours. *See United*

*States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

MARSHALL, *J.*, agrees with this dissent.